IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| COLLETTE YOUNG and HENRY BENNETT, individually and on behalf of all similarly situated employees, | : : : : | CIVIL ACTION  No.:  Hon. |
| Plaintiffs, | : : | |
| v. | : : | |
| CHIEFTAIN COATING, LLC, BURKARD INDUSTRIES, INC. and JOHN "JAY" BURKARD, jointly and severally, | : : : : : | |
| Defendants. | : : | |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Collette Young and Henry Bennett, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective Action Complaint against Defendants, Chieftain Coating, LLC, Burkard Industries, Inc., and John "Jay" Burkard, and state as follows:

## INTRODUCTION

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, Collette Young and Henry Bennett, individually and on behalf of all similarly situated persons employed by Defendants, Chieftain Coating, LLC, Burkard Industries, Inc., and John "Jay" Burkard, arising from Defendants' willful

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2.     Defendants offer metal finishing services to their customers and employed approximately 150 production employees at any given time in order to serve those customers.

3.     Defendants' production employees are hourly, non-exempt employees.

4.     Defendants required their production employees to work a full-time schedule, plus overtime. However, Defendants failed to compensate their production employees for all hours worked.

5.     Defendants maintained a common policy and/or practice of requiring their production employees to regularly work before, during, and after their scheduled shifts without pay.   The unpaid work was compensable and amounted to overtime because the time was in addition to the production employees' full-time schedules (*i.e.*, 40 hours per week).

6.     Defendants also failed to pay their production employees their correct overtime rate under the FLSA's regular rate calculation. Specifically, Defendants' production employees received hourly shift premiums, incentive pay, production bonuses, and other compensation which was improperly excluded from the required regular rate calculation.

7.     Defendants' production employees performed similar or related job duties, were paid in a similar manner, worked in the same location, and were subject

to the same compensation policies and practices.

8.     Defendants had knowledge of, and/or could have easily determined with reasonable diligence, that production employees were working outside their shifts without pay, and could have properly compensated Plaintiffs for all of their work. However, Defendants deliberately failed to do so.

9.     Likewise, Defendants could have determined the production employees' correct overtime rates using the FLSA's required regular rate calculation, but deliberately failed to do so.

10.     Plaintiffs bring this action on behalf of themselves, and all other similarly situated hourly production employees who worked for Defendants in the past three years, to recover unpaid wages and overtime, liquidated damages, attorneys' fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

12.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13.     Defendants' annual sales exceeded $500,000 and they had more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' production employees engaged in interstate commerce and therefore they were also covered by the FLSA on an individual basis.

14.     This Court has personal jurisdiction over Defendants because they did business within the state of Michigan, maintained their principal place of business in Michigan, and were registered in the state of Michigan to conduct business.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employed their production employees in this District, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

## PARTIES

16.     Plaintiff, Collette Young, is a resident of Fraser, Michigan. She was employed by Defendants Burkard Industries and John Burkard as an hourly production worker in Clinton Township, Michigan from August 1997 to July 2019. Ms. Young signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit A*.

17.     Plaintiff, Henry Bennett, is a resident of Detroit, Michigan. He was employed by Defendants Burkard Industries and John Burkard as an hourly production worker in Clinton Township, Michigan from February 1993 to

November 2019. After a merger or acquisition among the Defendants, Mr. Bennett continued his employment with Defendant Chieftain Coating in or about November 2019 and remains employed with the company. Mr. Bennett signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit B*.

18.     Opt-In Plaintiffs Phyllis Holland, Linda Lietz, Araina Thompson, and Raif Zenuni also signed consent forms to join this collective action lawsuit, which are attached hereto as *Exhibit C*.

19.     Additional Opt-In Plaintiffs were or are employed by Defendants as hourly production employees during the past three years and their consent forms will also be filed in this case.

20.     Defendant, Chieftain Coating, LLC, is a Michigan limited liability company that was organized in 2018.

21.     Chieftain Coating, LLC is registered to do business in Michigan and can be served through its registered agent, Reinhard Eschbach, located at 25101 Groesbeck Hwy, Warren, Michigan 48089.

22.     Defendant, Burkard Industries, Inc. is a Michigan corporation that was incorporated in 1984.

23.     Defendant, John "Jay" Burkard, is an individual and was an owner, and the President and Treasurer, of Burkard Industries, Inc.

24.     Burkard Industries, Inc. is registered to do business in Michigan and

can be served through its registered agent, John Burkard, located at 35300 Kelly Road, Clinton Township, Michigan 48035.

25.    Upon information and belief, Defendant Chieftain Coating, LLC merged with or acquired Defendant Burkard Industries in or about October/November 2019 and continues to operate in the same or similar manner with many of the same management personnel.

26.    As part of the October/November 2019 merger or acquisition, some production employees were terminated, but others (like Plaintiff Bennett) transitioned their employment and became employed by Chieftain Coating, LLC.

27.    Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiffs in violation of the FLSA.

## GENERAL ALLEGATIONS

28.    The named Plaintiffs worked for Defendants as hourly production employees, most recently earning between $12.00 and $15.00 per hour.

29.    Defendants' production employees' job duties generally included: physically hanging metal parts on the production lines; washing, masking, and coating the parts; moving the parts back off the production lines; and packaging the parts for distribution.

30.    According to Defendants' employee handbook, the production

employees' "[s]tandard working hours are eight hours a day, five days a week."

31.     Defendants' production employees, including the named Plaintiffs, typically worked Monday through Friday, and often on Saturdays, and they regularly worked over 40 hours per week.

32.     Defendants' production employees, including the named Plaintiffs, punched in/out for their shifts via biometric time clocks located in Defendants' facility (i.e., finger or hand print scans).

33.     Defendants paid their production employees, including the named Plaintiffs, on a weekly basis.

34.     During the relevant statutory period, Defendants employed over 100 production employees at any given time to perform metal finishing services for its customers.

35.     Defendants' production employees, including the named Plaintiffs, regularly worked unpaid hours before, during, and after their scheduled shifts, as described below.

**Pre-Shift Work**

36.     Defendants' production employees often arrived up to 30 minutes early and began setting up and performing their regular job duties *before* the start of their scheduled shifts.

37.     Defendants' production employees, including the named Plaintiffs,

punched in upon arrival and remained punched in while performing their pre-shift work, but did not actually start getting paid until the start of their scheduled shifts.

38.     Defendants' supervisors were present at the facility and were fully aware that the production employees were working before the start of their shifts.

**Unpaid Meal Periods**

39.     According to Defendants' employee handbook, the production employees were provided with "a 30-minute lunchtime, which is not paid." As such, the production employees' daily work schedules were supposed to include a full 30-minute unpaid meal period.

40.     Defendants' production employees were required to punch out at the beginning of their 30-minute meal periods.

41.     Defendants' production employees were required to punch in at the conclusion of their 30-minute meal periods.

42.     However, regardless of *when* they actually punched in/out for their meal periods, Defendants automatically deducted 30 minutes from the production employees' paychecks.

43.     Defendants' production employees, including the named Plaintiffs, were required to work a substantial amount of time during their unpaid meal periods. However, this work time went uncompensated.

44.     In order to deduct an unpaid meal period from an employees'

compensable time, the employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be ***completely relieved*** from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

45.    Defendants failed to provide their production employees with bona fide meal periods.

46.    One way in which Defendants failed to provide a bona fide meal period was by failing to pay its production employees for the time spent finishing their work when it overlapped into the unpaid meal period.

47.    Another way in which Defendants failed to provide a bona fide meal period was by requiring its production employees to engage in various tasks during their 30-minute lunch break including, but not limited to their regular job duties.

48.    The work performed by Defendants' production employees during their unpaid meal periods often took approximately 10-20 minutes per day, and sometimes the production employees worked through their entire 30-minute unpaid meal period.

49.    Defendants' systemic practice resulted in their production employees not

being paid for all time worked and for all of their overtime in violation of the FLSA.

50.    Defendants' supervisors were present at the facility and were fully aware that the production employees were working during their unpaid meal periods.

### Defendants' Flexible Break System

51.   Defendants also maintained a written rest-break policy called the "Flexible Break System."

52.    The Flexible Break System provided that "[e]mployees must be punched out if away from their workstation unless they have left due to a work reason." Further, the Flexible Break System allotted Defendants' production employees a total of 30 minutes of paid rest break time per shift, to be used through "a maximum of six breaks" per shift.   However, "the maximum time per individual break is 15 minutes" and "any break under five minutes is charged at five minutes."

53.   Defendants' Flexible Break System policy also provided that "[i]f an employee uses more than their 30 minutes allotted break time in any given day, they will be docked for time exceeded."

54.   Defendants' Flexible Break System policy also provided that, where production employees worked more than 10 hours in a day, they were provided with an additional 15-minute *unpaid* rest break.

55.   As a result of Defendants' Flexible Break System, Defendants' production employees, including the named Plaintiffs, were docked for taking rest

breaks of less than 20 minutes.

56.   29 C.F.R. 785.18 provides:

Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

57.   Defendants' utilized their Flexible Break System policy to unlawfully withhold pay from their production employees.

**Post-Shift Work**

58.   Defendants' supervisors regularly asked their production employees, including the named Plaintiffs, to stay past their scheduled shifts and continue performing their job duties.

59.   As a result, Defendants' production employees, including the named Plaintiffs, often worked past their scheduled shifts and remained punched in while performing the work; however, Defendants only paid Plaintiffs until the end of their scheduled shifts.

60.   Plaintiffs estimate they regularly worked up to 20 minutes after their shifts without pay.

61.   Defendants' supervisors were present at the facility and were fully aware that the production employees were working after the end of their shifts.

**Plaintiffs Complained About the Unpaid Work**

62.     Defendants' production employees, including the named Plaintiffs, complained on numerous occasions to Defendants' supervisors regarding their unpaid work and the unpaid time resulting from the auto-deducted lunch breaks, but Defendants failed to correct the issue; instead, Defendants told the production employees to complain to other supervisors, told them they would eventually be compensated (they were not), and Defendant John Burkard even told them himself that they would not be paid for all their work.

63.     Defendants maintained cameras throughout their facility which, if those recordings still exist, would show that the production employees regularly worked before and after their scheduled shifts, and during their unpaid lunch breaks.

64.     Defendants had actual and constructive knowledge that their production employees were working outside of their scheduled shifts and during their unpaid lunch breaks without pay.

**Plaintiffs' Extra Work Resulted in Unpaid Overtime**

65.     An example of a specific workweek where Defendants failed to pay Plaintiff, Collette Young, overtime for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

a.   Weekly pay statement dated July 5, 2019:

➢ Plaintiff was paid for 51.4 hours for the workweek of June 23, 2019 (***Exhibit D***).

➢ With her additional unpaid pre- and post-shift work, and the

work performed during unpaid meal periods, Plaintiff Young should have been paid an additional amount as overtime for the workweek.

66.    At all relevant times, Defendants were able to track the amount of time its production employees spent actually working pre- and post-shift, and during their meal periods and rest breaks; however, Defendant failed to pay its production employees for the extra work they performed.

67.    At all relevant times, Defendant's policies and practices deprived its production employees of wages owed for the pre-shift, meal periods, break time, and post-shift work they performed. Because Defendants' production employees typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

68.    Defendants knew or should have known that the named Plaintiffs' and their other hourly production employees' extra work was compensable as overtime under the FLSA.

**Regular Rate Calculation**

69.    In addition to the unpaid work described above, Defendants failed to pay the named Plaintiffs and other production employees the correct overtime rate.

70.    The named Plaintiffs and other production employees were eligible for, and received, monthly production bonuses. The amount of the monthly production bonuses depended on Defendants' established production metrics, but the

production employees' typical bonus amounted to approximately $200-$300 per month.

71.    Additionally, Defendants failed to take the named Plaintiffs' and other production employees' monthly bonus amounts into consideration when calculating their regular rate of pay and resulting overtime rate premium. As a result, Defendants did not pay the proper overtime rate.

72.    As non-exempt employees, the named Plaintiffs and other production employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

73.    Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

74.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

75.    Defendants' shift differential premiums and production bonuses do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

76.    There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.   Defendants carry the burden to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

77.    Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

78.    Plaintiffs' "total remuneration" included not only their hourly pay, but also any shift differential premiums and production bonuses.   Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not

included in the computation of the established basic rate…."

79.     However, Defendants completely failed to incorporate the shift differential premiums and production bonuses into the named Plaintiffs' and other production employees' regular hourly rate calculation, resulting in a *prima facie* violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

80.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly production employees who worked for Chieftain Coating, LLC and/or Burkard Industries, Inc. in the Clinton Township facility at any time during the past three years.*

(hereinafter referred to as the "Collective").  Plaintiffs reserve the right to amend this definition if necessary.

81.     Excluded from the Collective are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

82.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).   The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject

to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

83.     The employment relationships between Defendants and every putative Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of compensation owed to each employee – does not vary substantially among the putative Collective members.

84.     The key legal issues are also the same for every putative Collective member, to wit: (a) whether the unpaid pre-, mid-, and post-shift time was compensable under the FLSA; and (b) whether Defendants determined the correct overtime rate under the regular rate calculation.

85.     Plaintiffs estimate that the Collective, including both current and former employees over the relevant period, will include several hundred members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

### (29 U.S.C. § 216(b) Collective Action)

86.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

87.     At all times relevant to this action, Defendants were "employers" under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

88.     As of the October/November 2019 merger or acquisition, Defendants were also joint "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.2.

89.     Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

90.     At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

91.     Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

92.     Plaintiffs and other similarly situated employees, by virtue of their job duties and activities actually performed, are all non-exempt employees.

93.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

94.     At all times relevant to this action, Defendants required Plaintiffs and all similarly situated current and former employees to perform work before and after their scheduled shifts, but failed to pay these employees the federally mandated overtime compensation for all work performed.

95.     At all times relevant to this action, Defendants required Plaintiffs and

all similarly situated current and former employees to perform work during their unpaid meal periods, but failed to pay these employees the federally mandated overtime compensation for any of the work performed. As a result, Defendants owe Plaintiffs and the Collective unpaid wages for the full 30 minutes of those unpaid meal periods.

96.     The off-the-clock work performed by Plaintiffs and all similarly situated employees was an integral and indispensable part of their jobs and these activities and the time associated with these activities is not *de minimis*.

97.     In workweeks where Plaintiffs and other similarly situated employees worked 40 hours or more, the uncompensated pre- and post-shift work, the uncompensated work during unpaid meal and rest periods, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.   29 U.S.C. § 207.

98.     By failing to include all remuneration (*e.g.*, shift differentials, incentive pay, and production bonuses) into the regular rate calculation, Defendants failed to compensate their production employees properly under the FLSA.

99.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for their production employees to complete the extra unpaid work and Defendant could have properly compensated their production employees for the work performed, but did

not.  Defendants also could have provided Plaintiffs and the Class with bona fide meal periods, but did not.

100.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages, an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

a.   Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b.   Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all member of the proposed Collective, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c.   Designating the named Plaintiffs as the representatives of this FLSA collective action and the undersigned attorneys as counsel for the same;

d.   Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e.   Declaring Defendants' violation of the FLSA was willful;

f.   Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Collective the full amount of

damages and liquidated damages available by law;

g.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

h.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

i.      Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, Collette Young and Henry Bennett, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Date:   February 28, 2020                    Respectfully Submitted,

                                             */s/ Jesse L. Young*
                                             Jesse L. Young (P72614)
                                             Thomas J. Cedoz (P82094)
                                             **KREIS ENDERLE, P.C.**
                                             8225 Moorsbridge, P.O. Box 4010
                                             Kalamazoo, Michigan 49003-4010
                                             (269) 324-3000
                                             jyoung@kehb.com
                                             tcedoz@kehb.com

                                             *Counsel for Plaintiffs*