UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLETTE YOUNG et al.,

      Plaintiffs,

                                 Case No. 20-CV-10520-DT

v.

                               HON. DENISE PAGE HOOD

CHIEFTAIN COATING, LLC, et al.,

      Defendants.

_____/

## ORDER GRANTING MOTION FOR PROTECTIVE ORDER

### I.    BACKGROUND

On February 28, 2020, Plaintiffs Collette Young and Henry Bennett filed a Collective Action complaint under Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 against Defendants Chieftain Coating, LLC, Burkard Industries, Inc, and John "Jay" Burkard. [Complaint, ECF No. 1]. All Defendants filed their answers to the complaint on May, 11, 2020. [ECF Nos. 17, 18]

Burkard Industries in Clinton Township, Michigan, provided metal finishing services to customers and employs hourly production workers [ECF No.1, Page.ID 4] [ECF No. 10, Page.ID 53] Plaintiffs Young and Bennett were employed as hourly production employees at Burkard Industries. [ECF No.1, Page.ID 4] Young worked for Burkard from 1997-2019 and Bennett from 1993-2019. [ECF No.1, Page.ID 4-5] [ECF No. 18 at 284] Bennett was employed with Chieftain after October 31, 2019.

[ECF No. 18, Page.ID 285] Phyllis Holland, Linda Lietz, Ariana Thompson, and Raif Zenuni also worked for Burkard Industries. Attached to the complaint are opt-in consent forms from the two named Plaintiffs as well as consent forms from Phyllis Holland, Linda Lietz, Ariana Thompson, and Raif Zenuni. [ECF No. 10, Page.ID 54-56] [ECF No. 18, Page.ID 285]  [ECF No. 1-1, Page.ID 22-30]

Plaintiffs state that the job duties of hourly production workers included physically hanging metal parts on the production lines; washing, masking, and coating the parts; moving the parts back off the production lines; and packaging the parts for distribution. [ECF No. 10, Page.ID 55].  Plaintiffs allege that Defendants maintained an employment policy, which is the basis of this FLSA complaint, that required hourly production employees like Plaintiffs to work unpaid overtime hours before, during, and after their scheduled shifts. [ECF No.10, Page.ID 56]

On May 1, 2020 Defendants Burkard Industries and John "Jay" Burkard sent letters to former employees which contained checks for "backpay, including any overtime" that were calculated after an audit of their wage and hour records.  [ECF No. 15, Page.ID 77-78] [ECF No. 15-1, Page.ID 207] The letter offered former employees an additional $125 for signing the attached "acknowledgment and waiver of potential class claims" and sending it back to Jay Burkard through mail or email by May 15, 2020. [ECF No. 15-1, Page.ID 207] The letter did not mention the current

pending lawsuit against the Defendants.

This matter is before the Court on Plaintiffs' Motion for Protective Order regarding communications sent to employees by Defendants.  Defendants oppose the motion.  A hearing was held on the matter.

## II.    ANALYSIS

### A.    Standard of Review

To prevent abuse in a FLSA Collective Action, district courts have the broad discretion and duty to enter appropriate orders governing the conduct of counsel and the parties. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). This standard was originally articulated in *Gulf Oil Co.* to apply to Rule 23 class actions. In *Hoffman-LaRoche*, the Court adopted the same standard for ADEA actions, which incorporate FLSA procedures. *Id.* As a result, *Hoffman-LaRoche* is commonly cited as an authority in FLSA cases.

A court will traditionally exercise its authority to assure the orderly and expeditious disposition of cases. *Id.* at 172-73. (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)). Under Rule 83, district courts may regulate practice in any manner not inconsistent with federal or local rules for any case not provided for by rule. *Id.* A court's interest in managing collective actions in an orderly fashion is also

supported by Rule 16. *Id.* Through the scheduling order and pretrial conferences, courts are encouraged to address "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, [or] multiple parties." *Id.* (citing Fed. R. Civ. P.16(c)(10))

### B.    Protective Order

#### 1.    Law

An order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *Gulf Oil Co.*, 452 U.S. at 101. The party requesting a protective order must demonstrate that (1) a certain form of communication has occurred or is threatened to occur, and (2) the form of communication is abusive to the proper functioning of the litigation. *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). Abusive communications that courts have found sufficient to warrant a protective order include those which:  coerce prospective class members into excluding themselves from the litigation; contain false, misleading, or confusing statements; or undermine cooperation with or confidence in class counsel. *Id.*

The Sixth Circuit has not directly addressed the issue of First Amendment concerns related to limiting communications in an FLSA suit. However, courts within

the Sixth Circuit have followed Eleventh Circuit precedent, which states that an order to limit communications concerning ongoing litigation may be granted if it is (1) grounded in good cause, and (2) issued with a heightened sensitivity for First Amendment concerns. *Murton v. Measurecomp*, LLC, 2008 U.S. Dist. LEXIS 108085, *12-14 (N.D. Ohio Dec. 2, 2008) (citing *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985)). *See also Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 871 (S.D. Ohio 2011); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010).  Four criteria to determine "good cause" are: (1) the severity and likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order.   *Kleiner*, 751 F.2d at 1205.

### 2.    *Non-compliance with Local Rule 7.1(a)*

Without addressing the merits of Plaintiffs' Motion, Defendants argue that Plaintiffs' Motion should be stricken for non-compliance with Local Rule 7.1(a). [ECF No. 25 Page.ID 359] Defendants claim that parties are required by Local Rule 7.1(a) to confer and solve disputes privately before seeking Court intervention and that Plaintiffs' failure to give adequate time for Defendants to respond is a violation of Local Rule 7.1. *All About Chores LLC v. Lyon*, No. 18-CV-12000, 2019 WL 2590750, at *1-2 (E.D. Mich. June 25, 2019); *United States v. Fisher*, No. CRIM. 05-

5

50023, 2006 WL 334246, at *1 (E.D. Mich. Feb. 10, 2006); *Dupree v. Cranbrook Educ. Cmty.*, No. 10-12094, 2012 WL 1060082, at *13 (E.D. Mich. Mar. 29, 2012); *Delisle v. Sun Life Assur. Co. of Canada*, No. 06-11761, 2007 WL 4547884, at *4 (E.D. Mich. Dec. 19, 2007); *Palumbo v. Commissaris*, No. 2:16-CV-11209, 2017 WL 2240754, at *2 (E.D. Mich. May 23, 2017). [*Id.* at 360-61]. Defendants argue that their counsel is making a good-faith effort to comply with the rules of this Court, whereas Plaintiffs are trying to circumvent the local procedures through "overly-aggressive filings and postures" and should not be granted the Motion based on their actions [*Id.* at 363]

Plaintiffs assert that counsel did not violate Local Rule 7.1 because time is of the essence in FLSA cases and Plaintiffs specifically requested concurrence in their email to Defendants, noting that their Motion would be filed "today" [ECF No. 28, Page.ID 543] Plaintiffs support their argument by citing cases from the Eastern District where the court chose not dismiss a motion based on noncompliance with Local Rule 7.1(a). *Jarvis v. Cooper*, 2013 U.S. Dist. LEXIS 44717, *30-31 (E.D. Mich. Oct. 9, 2019). [*Id.*]

The Court agrees that Plaintiffs did not offer sufficient time for Defendants to respond to the email sent on the morning of May 8, 2020. Although the Court recognizes that time is of the essence for potential Collective members, it is

6

unreasonable for the Plaintiffs to expect a response from opposing counsel within an hour of receiving an email; Plaintiffs' counsel should have placed a telephone call to Defendants' counsel's office if the matter was emergent.  However, since Defendants had the opportunity to address the motion, the Court declines to strike Plaintiffs' motion.

### 3.   Abusive Communications

The Court first must address whether the Plaintiffs demonstrate a clear record and specific findings of alleged communications with the putative Collective Members. Plaintiffs provide the Court with two letters and waiver agreements sent to potential Collective members, Rickie Bender [15-1, Page.ID 207-16] and Davon Tucker [ECF No. 15-2, Page.ID 225-31] attached to their Motion. The content of the letters are identical with the exception of the individual backpay calculations, which vary based on Defendants' determination of amount owed. [*Id.*] The letter sent by Defendants states that the check is for "backpay, including any overtime" and provides Defendants' calculations on another page, which merely indicate the money owed and on what date. [*Id.*] The Court finds this evidence of Defendants' communications are sufficient to meet the first requirement of a Motion for a Protective Order.

Next, the Court assesses whether the specific communications with the putative

Collective members were abusive. Plaintiffs argue that Defendants' communications were coercive because they encouraged putative Collective members not to join the case prior to having been made aware of the present suit or given Court-authorized notice. [ECF No. 15 Page.ID 188] Plaintiffs argue that Defendants' offer of backpay and additional money in exchange for an arbitration agreement also undermined the action because it discouraged putative Collective members from joining the suit and evaded the Court's managerial responsibility. [*Id*. at 190] Plaintiffs assert that uninformed putative Collective members may not opt-in now because they believe they are getting all their "backpay" and Defendants misled the Collective members about choices of remedies available to them. [*Id.* at 190-91] Plaintiffs indicate that Defendants' communications were especially coercive because of the employer-employee relationship between the class proponents and the class. *NLRB v. Gissel Packing Co*., 23 L.Ed.2d 547, 617-18 (1969); *Abdallah v. Coca-Cola Co*., 186 F.R.D. 672 (N.D. Ga. 1999) [*Id.* at 188]

Plaintiffs highlight a number of cases where courts found a defendant's communication to be misleading because it failed to include information about the existence of a pending lawsuit. [*Id.* at 191] *Cty. Of Santa Clara v. Astra USA, Inc.*, 2010 U.S. Dist. LEXIS 78312, at *22-23 (N.D. Cal. July 8. 2010); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010); *Burford v. Cargill, Inc.*,

2007 U.S. Dist. LEXIS 1679, at *5 (W.D. La. Jan. 9, 2007). Plaintiffs emphasize that with FLSA claims, the commencement of a lawsuit does not toll the applicable statute of limitations, so "time is of the essence." 29 U.S.C. § 256(b). Plaintiffs argue that Defendants should not be able to communicate with employees until after the notice period ends. [*Id.* at 192-93] Plaintiffs also argue that the Court should require Defendants to complete a communication log. *See e.g., Whitfield v. Trinity Rest. Group, LLC*, Case No. 18-cv-10973 (E.D. Mich. May 30, 2019) (ECF No. 58) (ordering defendants keep a communication log after having communicated improperly with putative collective members); *Bourne v. Ansara Rest. Group, Inc., et al*, Case No. 16-cv-10332 (E.D. Mich. June 29, 2016) (same) [*Id.* at 193]

Plaintiffs claim that the arbitration agreements are improper because they do not convey the existence of the suit nor that plaintiffs could lose their right to participate in the lawsuit by signing the agreement. [*Id.*] Plaintiffs also indicate that defense counsel was clearly involved in the creation of Waiver Agreement because of the "Clark Hill" tag on bottom of page. [*Id.* at 194] Plaintiffs argue that courts have held that arbitration agreements or class waivers are improper. *Degidio v. Crazy Horse Saloon & Rest, Inc.*, 880 F.3d 135 (4th Cir. 2018); *Billingsley v. Citi-Trends, Inc.*, 560 F. App'x 914, 921-24 (11th Cir. 2014); *Balasanyan v. Nordstrom, Inc.,* 2012 WL; 760566, at *2 (S.D. Cal. Mar. 8, 2012); *Williams v. Securitas Sec. Servs. USA, Inc.*,

2011 WL 2713741, at *2 (E.D. Pa. July 13, 2011); *Astarita v. Menard, Inc.*, 2019 U.S. Dist. LEXIS 194337 (W.D. Mo. Nov. 8, 2019).  [*Id.*]

Defendants argue that Plaintiffs' relief sought is unnecessary and overly restrictive because it would undermine the Defendants' First Amendment rights. [ECF No. 25 Page.ID 363] Defendants argue that limitations on First Amendment rights should only be imposed if serious coercion occurs, not merely potential coercion. [*Id.*] *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997); *see also In Re Winchell's Donut Houses*, 1988 WL 135503, at *1 (Ct. of Chancery, Del. Dec. 12, 1988). Defendants argue that an order prohibiting such communications should therefore be limited, and based on a "clear record and specific findings" that reflect a need to limit interferences with rights of parties. (quoting *Gulf Oil Co.*, 452 U.S. at 102). *See also Doe 1 v. Mich. Dep't of Corr.*, No. 13-14356, 2014 WL 3809419, at *5 (E.D. Mich. Aug. 1, 2014); *Perkins v. Benore Logistics Sys., Inc.*, No. 16-13717, 2017 WL 445603, at *2 (E.D. Mich. Feb. 2, 2017) *[Exhibit 11]*; *Snelling v. ATC Healthcare Servs., Inc.*, No. 2:11-CV-00983, 2013 WL 1386026, at *2-*3 (E.D. Mich. Apr. 4, 2013) *[Exhibit 12]*; *Hathaway v. Masonry*, No. 5:11-CV-121, 2011 WL 4916532, at *2 (W.D. Ky. Oct. 17, 2011) *[Exhibit 13]*; *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002).

Defendants further argue that because Plaintiffs' protective order seeks to

control "any and all conversations" between potential Collective members and Defendants, it is overly broad. [*Id.* at 366] *Reed v. Am. S.S. Co.*, 682 F. Supp. 333, 338 (E.D. Mich. 1988); *see also Williams v. U.S. Dist. Court*, 658 F.2d 430, 434 (6th Cir. 1981).

Defendants claim that it would be prejudicial to limit Defendants' communications prior to conditionally certifying a class as restrictions on speech should only be used to the extent absolutely necessary and as narrowly as possible. *Troyer v. T. John E. Prods., Inc.*, No. 9-cv-821, 2010 WL 11534382, at *1 (W.D. Mich. Oct. 14, 2010) [*Id.* at 367-68] Defendants indicate that courts have been wary to limit the parties' abilities to communicate with employees because it could limit their ability to make informed decisions on whether to participate in the action. [*Id.* at 367] Defendants argue that Plaintiffs' arguments fail because they relied on cases where a class was conditionally certified and offered little to no support on their accusation of abusive behaviors by the Defendants. *Whitfield v. Trinity Rest. Group, LLC,* Case No. 18-cv-10973 (E.D. Mich. May 30, 2019) (communication limited). [*Id.* at 369-70]

Defendants claim the test for coercion is whether the conduct somehow overpowers the free will or business judgment of potential class members. [*Id.*] *Jenifer v. Delaware Solid Waste Auth.*, No. CIV. A. 98-270 MMS, 1999 WL 117762, at *5

(D. Del. Feb. 25, 1999) (citing *Mobilificio San Giacomo S.P.A. v. Stoffi,* 1998 WL 125536, at *9 (D. Del. Jan 29, 1998)). Defendants argue that they were not coercive because they did not make any allusion that future employment would be tied to accepting the additional $125. [*Id.* at 371] *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *12 (E.D. Mich. June 30, 2016); *Carlson v. Leprino Foods Co.*, No. 5-cv-00798, 2006 WL 3231266, at *1 (W.D. Mich. Nov. 7, 2006). ("Although defendant's correspondence certainly seem to be an attempt to ingratiate itself to its employees, the Court does not find that it rises to a level of coercion.") *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D. Tex. 2003) (employer's communication was coercive when it tied to future employment); *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843, 845 (2nd Cir.1980) (letters to class members warning them that they might be liable for costs should they participate in the class action and urging them to disassociate themselves from the suit were improper); *Bourne v. Ansara Rest. Group, Inc., et al,* No. 16-cv-10332 (E.D. Mich. June 29, 2016). *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 WL 2239797, at *1 (N.D. Cal. June 15, 2012) (communication by defendants was abusive where it stated that the named plaintiffs were unethical, solely interested in money, and suggested that putative class members involved in the suit would "expose themselves to the searing scrutiny and time commitment of a public trial for a few

hundred dollars"); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994) (communication was coercive putative class members were advised not to participate in the lawsuit). Defendants assert that prohibiting employer communication with employees and former employees disincentivizes businesses like Defendants' from admitting and trying to correct their wrongs to avoid litigation. [*Id.* at 373-74]

Arbitration agreements are not in themselves improper in FLSA actions. The Sixth Circuit held that in 29 U.S.C § 216(b), FLSA does not require named Plaintiffs and similarly situated employees to bring their claims together, but rather, an employee has the option to sue on behalf of himself and other employees. *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018). Therefore, it gives employees the *option* to bring their claims together, but does not expressly vindicate their rights in an FLSA collective action. *Id.*

While arbitration agreements and pre-notice communication with putative Collective members in generally are not expressly prohibited, Defendants' communications are coercive in nature. Defendants' communications specifically address the issue of backpay and overtime addressed in the present action. Defendants' letter mentions that $125 in exchange for signing waiver of "potential" class claims, while the arbitration agreement itself addresses the existence of a current

"bona fide dispute" under the FLSA. Defendants' arbitration agreement begins with the following paragraph:

> I ACKNOWLEDGE AND AGREE that the attached calculation of back wages and overtime is a fair and reasonable settlement of a bona fide dispute under the Fair Labor Standards Act and related state wage payment law. The sum paid to me includes an amount that represents the full value of the payment and any alleged back wages and liquidated damages that I may claim I was owed under the Fair Labor Standards Act.

[ECF No. 15-1, Page.ID 216]

Defendants' notation of "potential" class claims suggests that there is not pending litigation, whereas the arbitration agreement clearly recognizes an existing, "bona fide" FLSA dispute. This mixed-messaging  between the letter and the arbitration agreement could certainly cause confusion for potential Collective members and influence their understanding of the remedies available to them. An employees decision on whether to accept the arbitration agreement may change upon notice of the pending action with Plaintiffs, as potential Class members would have reason to believe that the calculations are possibly not accurate. Potential Collective members would also be able to investigate the pending litigation on their own, allowing them to make an individual and informed decision about whether to accept the arbitration agreement or opt-into the lawsuit. Therefore, without knowledge of this specific case, Defendants' communications undermine the managerial role of this

14

Court in authorization of notice in the present suit and threaten the proper functioning of this litigation.

The Court also declines to accept Defendants' argument regarding the appropriate test for coercion. Defendants cite a single case which deals with potential coercion in a Rule 23 class action case. *Jenifer v. Delaware Solid Waste Auth.*, No. CIV. A. 98-270 MMS, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999). FLSA collective actions differ from Rule 23 Class actions, as employees must "opt into" the class for an FLSA action and employees "opt-out" in class actions. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d at 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Because the mechanisms for participation in a Rule 23 class action lawsuit differ from those in an FLSA collective action, the Court declines to adopt Defendants' proposed criteria.

In regards to the First Amendment concerns raised by Defendants, the Court finds that the Plaintiffs sufficiently support their request for a Protective Order based on the coercive nature of Defendants' communications but do not request relief with a heightened sensitivity for the first amendment concerns. The Court agrees with the Defendants that requested relief to provide a communication log for "any and all" communications between Defendants and putative Collective members is overly broad and declines to grant this form of relief to Plaintiffs.

The Court finds that the combination of the letters and arbitration agreements sent by Defendants were abusive to the proper functioning of this litigation and would grant the first and second requested forms of relief from Plaintiffs to send remedial communication to Collective members and to void the specific arbitration agreements obtained by Defendants. The Court denies Plaintiffs' request for a communication log or sanction because those forms of relief would infringe on the Defendants' First Amendment rights and, in general, are overly broad for the communications at issue in this Motion.  Defendants, however, should maintain such a log, if, during the discovery phase, Plaintiffs require such and are able to show exceptions under the First Amendment.  Plaintiffs may so request this log during discovery if relevant.

## III.   CONCLUSION/ORDER

For the reasons set forth above,

**IT IS ORDERED** that Plaintiffs' Motion for Protective **(ECF No. 15)** is **GRANTED in part and DENIED in part**, as more fully set forth above.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  July 29, 2022

16